IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MARKDUTCHCO 1 B.V. and )
MARKMIDCO S.ÀR.L, )
         )
        Petitioners, )
         )
        v. )    C.A. No. _____
         )
ZETA INTERACTIVE CORP., )
         )
        Respondent. )

## PETITION TO COMPEL ARBITRATION PURSUANT TO THE CONVENTION ON THE RECOGNITION AND ENFORCEMENT OF FOREIGN ARBITRAL AWARDS AND THE FEDERAL ARBITRATION ACT

Petitioners MarkDutchCo 1 B.V. ("MarkDutchCo") and Markmidco S.àr.l ("Markmidco" or "Seller") (collectively, "Petitioners"), by and through their undersigned attorneys, hereby bring this petition to compel arbitration against Zeta Interactive Corp. ("Zeta" or "Buyer") pursuant to Article II of the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 *et seq.* (the "Convention"), as implemented by Chapter 2 of the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"). In particular, as a result of Zeta's wholesale disregard for its basic contractual obligations, Petitioners seek to compel arbitration of the parties' dispute concerning a Second Earn-out Payment required by an Interest Purchase Agreement by and between Zeta and Seller, dated as of August 28, 2015 (the "IPA" or "Purchase Agreement"), a true and correct copy of which is attached as Exhibit 1 hereto.[1] Petitioners hereby allege the following in support of their Petition:

---

[1] Capitalized terms not otherwise defined herein shall have the meaning set forth in the IPA. *See* Ex. 1.

## NATURE OF THE ACTION

1.     This action arises from Zeta's refusal to submit to a contractually mandated arbitration to resolve the parties' accounting and related disputes regarding an $8 million Second Earn-out Payment Amount required to be paid under the IPA.  Notwithstanding the IPA's express requirement that all post-Closing earn-out disputes be submitted to binding arbitration, as well as Zeta's prior participation in an earlier arbitration that resulted in a final arbitral award in Seller's favor and a court-imposed judgment against Zeta requiring Zeta to pay the First Earn-out Payment Amount, Zeta has refused to proceed with the arbitration of the parties' follow-on disputes with respect to the Second Earn-out Payment.  Zeta has not offered any cogent explanation for its refusal to arbitrate, despite previously acknowledging that this matter was properly noticed for arbitration and that Zeta would be "willing to proceed with a second arbitration on certain specified terms" not reflected in the parties' IPA.  Instead, as reflected in the exhibits to this Petition, Zeta's sole stated explanation for its refusal is that Zeta has unilaterally decided that arbitration "would not be productive at this time."  *See* Ex. 8.

2.     Under the IPA, Zeta purchased from Seller certain interests in several companies (the "Purchased Interests") that provide email marketing, text message marketing, database management, and other customer relationship management services to brands and retailers in the United States and internationally (the "CRM Business").  Zeta's purchase of the Purchased Interests took place immediately following the Seller's acquisition of those units as part of a larger transaction with non-party eBay Enterprise, Inc.  Pursuant to an assignment agreement among Markmidco, MarkDutchCo, and Zeta, dated as of November 2, 2015, Markmidco assigned certain interests in the IPA to MarkDutchCo.

3.     As part of the overall consideration for the Purchased Interests, Zeta agreed to pay Seller a "First Earn-out Payment Amount" of $4 million if a "First Earn-out Target" was achieved

and a "Second Earn-out Payment Amount" of $8 million if a "Second Earn-out Target" was achieved. *See* Ex. 1 § 2(b). The "First Earn-out Target" was achieved for the First Earn-out Period (*i.e.*, the period from December 1, 2015 to November 30, 2016) if "EBITDA" for the CRM Business was at least $10 million, and the "Second Earn-out Target" was achieved for the Second Earn-out Period (*i.e.*, the period from December 1, 2016 to November 30, 2017) if "EBITDA" for the CRM Business was at least $10 million.

4.     The IPA mandates that specific accounting standards and definitions must be applied when determining whether the earn-out targets were met. The IPA also requires that the parties must submit any earn-out disputes to an independent accounting arbitrator for resolution thereof. *See id.* § 2. More specifically, the IPA provides that the Arbitrator shall be the "sole arbiter of all matters, procedural and/or substantive" relating to disputed earn-out payments; that any arbitration must be conducted "in writing"; and that the Arbitrator's determination "shall constitute an arbitral award that is final, binding and non-appealable and upon which a judgment may be entered by a court having jurisdiction thereover." *Id.* §§ 2(c)(i)(B)-(C) (emphasis added).

5.     Petitioners have disputed Zeta's Second Earn-out Statement, which resulted in grossly understated EBITDA and supplied patently insufficient accounting information to support Zeta's position. Petitioners submitted this dispute to arbitration under the IPA, as the parties previously did in connection with the First Earn-out Statement. Nevertheless, despite multiple demands that Zeta move forward with arbitration, Zeta has refused to submit to arbitration. Instead, Zeta has offered multiple empty excuses for refusing to arbitrate, arguing variously that a second arbitration "would not be productive at this time," that a second arbitration "will yield nothing" for Petitioners, that Zeta does not "feel" that the parties' prior IPA-designated arbitrator (who Zeta previously identified as its preferred choice) is "well-suited to adjudicate this matter,"

and that it now wants agreement on different standards from those agreed in the IPA in order to proceed with a second arbitration. *See*, *e.g.*, Ex. 8. More recently, despite Petitioners repeated efforts to select an arbitrator and move forward, Zeta has simply refused to acknowledge Petitioners' demands.

6.      Given that Zeta will not respond to Petitioner's demands to cooperate in selecting an arbitrator and proceed with the arbitration required by the IPA, Petitioners have no choice but to seek an order from this Court compelling Zeta to abide by its contractual obligations and arbitrate the parties' Second Earn-out Payment dispute. Petitioners further respectfully request that the Court award their fees and costs incurred in bringing this Petition.

## RELATED ACTIONS

7.      As indicated, this proceeding is the second action necessitated by Zeta's refusal to abide by its IPA arbitration obligations, and the third resulting from Zeta's refusal to adhere to its basic contractual obligations arising from a heavily negotiated M&A acquisition involving sophisticated parties. In *MarkDutchCo 1. B.V. and Markmidco S.ÀR.L v. Zeta Interactive Corp.*, No. 19-3845, presently pending before the Third Circuit, Zeta has appealed from a summary arbitral award confirmation proceeding that Petitioners were forced to bring under the Convention and FAA as a result of Zeta's refusal to satisfy the final IPA-related arbitration award relating to the First Earn-out Payment. The District Court (Hon. Colm F. Connolly) previously confirmed the award, dismissed all of Zeta's counterclaims, and entered final judgment in favor of Petitioners.

8.      That summary arbitral award confirmation proceeding was followed by a separate civil action brought by MarkDutchCo due to Zeta's refusal to make a straightforward Holdback Amount payment required by the IPA's other payment procedures. In *MarkDutchCo 1. B.V. v. Zeta Interactive Corp.*, No. 20-2824, also pending before the Third Circuit, Zeta has appealed a final judgment entered by the District Court (Hon. Colm F. Connolly) in favor of Petitioner

MarkDutchCo in that action.

## THE PARTIES

9.      Petitioner MarkDutchCo is a private limited company organized under the laws of the Netherlands, with its registered address at Herikerbergweg 238 Luna Arena, 1101 CM Amsterdam.  Pursuant to an assignment agreement among Markmidco, MarkDutchCo, and Zeta, dated as of November 2, 2015, Markmidco assigned certain of its interests in the Purchase Agreement to MarkDutchCo.

10.      Petitioner Markmidco is a private limited company organized under the laws of the Grand Duchy of Luxembourg, with its registered address at 488 route de Longwy, L-1940 Luxembourg.  The Second Earn-out Payment at issue in this action is pursued by Markmidco in its capacity as the Seller under the Purchase Agreement, whose rights to the proceeds of this arbitration were assigned to MarkDutchCo under the above-referenced assignment.

11.      Respondent Zeta is a Delaware corporation with its address at c/o Zeta Interactive Holdings Corp., 185 Madison Avenue, 5th Floor, New York, NY 10016.

## JURISDICTION AND VENUE

12.      This Court has jurisdiction over this action pursuant to the Convention, as implemented by Chapter 2 of the FAA, 9 U.S.C. §§ 201 *et seq.*, given that the arbitration agreement at issue here arises from a commercial relationship, Petitioners are foreign companies, and U.S. district courts have original jurisdiction over actions governed by the Convention.[2]  9 U.S.C. §§

---

[2] Even in the absence of federal jurisdiction on the above-stated grounds, this Court also would have diversity jurisdiction over this action because Petitioner MarkDutchCo is a Dutch company with its principal place of business in the Netherlands, Petitioner Markmidco is a Luxembourg-based company with its principal place of business in Luxembourg, and Respondent is a corporation incorporated under the laws of Delaware with its principal place of business in New York.  The amount in controversy, specifically the $8 million Second Earn-out Payment Amount, exceeds $75,000, exclusive of interest and costs, as required by 28 U.S.C. § 1332.

202, 203.

13.     Under the Convention, this Court has jurisdiction to compel arbitration given Zeta's refusal to comply with the Second Earn-out arbitration required by the IPA.  Specifically, Section 206 of the Convention provides that "[a] court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States."  9 U.S.C. § 206.

14.     Venue is proper in this District under Section 204 of the Convention and Section 7(d)(ii) of the IPA because Seller and Zeta irrevocably and unconditionally agreed to submit to the exclusive jurisdiction of "any . . . state or federal court within the State of Delaware" for any dispute or controversy arising out of the IPA.

<strong><u>STATEMENT OF FACTS</u></strong>

**A.     The Purchase Agreement and Zeta's Purchase of the CRM Business**

15.     This action arises from a transaction in which Zeta acquired from Seller Markmidco various entities comprising the CRM Business, which provides email marketing services, text message marketing services, database management services, and attribution management services, including digital media services, to brands and retailers.  MarkDutchCo is the assignee of certain of Markmidco's rights under the Purchase Agreement, including its right to payment of the earn-out and related amounts awarded by the arbitrator.

16.     In exchange for the CRM Business, Zeta agreed to pay to Seller a Purchase Price consisting of three distinct components:  (i) a "Cash Purchase Price" of $23 million in cash; (ii) 1,685,717 shares of Buyer Common Stock; and (iii) an overall "Earn-out Payment Amount" consisting of a total of $12 million, payable in three separate tranches.  *See* Ex. 1 § 2.

17.      More specifically, the Purchase Agreement obligates Zeta to pay separate "Earn-out Payment Amounts" following the first, second, and third anniversaries of the Closing Date.

These additional payments are required to be made based on whether the CRM Business achieves certain minimum levels of "EBITDA," as defined in the Purchase Agreement. *See id.* § 2(b). The particular accounting standards and scope of "EBITDA" for these purposes were extensively negotiated and narrowly tailored by the parties for use solely in connection with determining whether earn-out payments would be payable under the Purchase Agreement. Among other things, the Purchase Agreement's EBITDA definition strictly limits the costs that may be applied by Zeta to reduce EBITDA. The IPA also reflects multiple other contractually-mandated standards governing the calculation of EBITDA and Zeta's obligation to both support its EBITDA calculations and provide direct access to information and personnel necessary to verifying those calculations.

18.     With regard to the specific dispute at issue here, Buyer is required to pay Seller a "Second Earn-out Payment Amount" of $8 million if the "Second Earn-out Target" is achieved. *See id.* § 2(b). The "Second Earn-out Target" is defined as "the achievement by the CRM Business of at least $10,000,000 in EBITDA for the Second Earn-out Period," which is in turn defined as "the twelve-month period commencing on the first day following the end of the First Earn-out Period and ending twelve-months thereafter." *Id.* App'x A at viii. The parties' original Closing Date was November 2, 2015. The Second Earn-out Period therefore started on December 1, 2016 and concluded on November 30, 2017.

19.     Recognizing that it was possible that post-Closing disputes might arise between the parties with respect to EBITDA-related and other earn-out calculations, Section 2 of the Purchase Agreement established a specific procedure for determining whether earn-out payments were required to be made and resolving any disputes relating to such matters. Under Section 2(c), Zeta unambiguously agreed that all disputes related to earn-out payments must be resolved by binding

arbitration.  Section 2(c)(i)(A) provides that any such disputes shall be submitted to the arbitrator "for resolution thereof."  The Purchase Agreement further provides that the arbitrator shall be the "sole arbiter of all matters, procedural and/or substantive, as to such Disputed Payment Amount." *Id.* § 2(c)(i)(B).

20.     The Purchase Agreement further requires that Zeta pay the Second Earn-out Payment Amount of $8 million, with $4 million payable within 5 business days of the date that "EBITDA for the Second Earn-out Period is finally determined" and $4 million "payable on the third anniversary of the Closing Date."  *Id.* § 2(b).  The Purchase Agreement also provides that Seller is entitled to "specific performance of the terms [of the Purchase Agreement] or other equitable remedies in the event of any such breach, without the necessity of proving the inadequacy of remedies at Law and to obtain injunctive relief against any breach or threatened breach of any covenant or agreement contained in [the Purchase] Agreement."  *Id.* § 7(m).

**B.     Zeta Refuses to Pay the First Earn-out Payment Amount,
        Resulting in Extended Arbitration and Litigation**

21.     Zeta's purchase of the CRM Business closed on November 2, 2015, and for the one year period thereafter resulted in Zeta's receipt of significantly more revenue from the CRM Business than the parties originally had forecasted in advance of the transaction.

22.     In an effort to avoid payment of its contractually-mandated First Earn-out Payment Amount, Zeta advanced a purported First Earn-out Statement that radically understated EBITDA.  After multiple preliminary disputes over information demands and other items, the parties referred all of their disputes to arbitration in accordance with Section 2 of the IPA.

23.     In particular, and consistent with Section 2(c)(i)(A) of the IPA, the parties jointly retained Deloitte, the accounting firm expressly designated in the IPA as the parties' preferred arbitrator, to determine the outcome of their First Earn-out Payment disputes.  During the

arbitration proceeding, neither party challenged the arbitrability of their disputes, the Arbitrator's qualifications, or the Arbitrator's authority to adjudicate the parties' disputes.  Indeed, Zeta itself identified the Deloitte partner who arbitrated the parties' disputes as its preferred arbitrator.

24.     On agreement of all parties, the parties made extensive written submissions to the Arbitrator.  On August 4, 2017, the arbitrator issued his final award, finding against Zeta with respect to the entirety of the First Earn-out Payment Amount.  However, unhappy with the outcome, Zeta refused to pay the First Earn-out Payment Amount.  As a result, on September 6, 2017, Petitioners commenced the action *MarkDutchCo 1. B.V. and Markmidco S.ÀR.L v. Zeta Interactive Corp.*, No. 19-3845, to confirm the final award.  The Court thereafter granted Petitioners' motions to confirm the award and to dismiss Zeta's counterclaims.  Zeta appealed the Court's decision, which appeal is presently pending before the Third Circuit.

**C.     Zeta Refuses to Pay the Second Earn-out Payment Amount**

25.     While Petitioners' proceeding to confirm the above-referenced award was pending, on December 19, 2017, Zeta advanced a purported Second Earn-out Statement notifying Seller of its position (as previously) that the CRM Business purportedly had not achieved a minimum EBITDA of $10 million for the Second Earn-out Period, and that the Second Earn-out Payment was therefore not due or payable.  As with its First Earn-out Statement, Zeta dramatically understated EBITDA in yet another attempt to avoid a payment that Zeta is required to make under the IPA.  Among other things, Zeta understated customer revenue, failed to apply the specific EBITDA definition negotiated by the parties by improperly overstating certain costs, failed to properly distinguish between different types of costs, and made other improper deductions in contravention of accepted accounting practices.

26.     Consistent with the IPA, on January 4, 2018, Seller timely objected to Zeta's Earn-out Statement.  *See* Ex. 2 (annexed schedule excluded).  Consistent with the IPA's post-Closing

procedures, Petitioners also made multiple demands for supporting information from Zeta – reflecting the bare minimum information that any accounting arbitrator would need to support Zeta's EBITDA calculations.  However, despite multiple requests for information and access to Zeta personnel mandated by the IPA, Zeta failed to provide sufficient factual support for its Second Earn-out Statement, or even to provide the same categories of information that it had previously supplied in connection with Seller's analysis of the First Earn-out Statement – information that the Arbitrator had found directly relevant to his multiple determinations adverse to Zeta in the arbitration.

27.     On January 19, 2018, pursuant to the IPA, Petitioners notified Zeta that Seller was referring the parties' unresolved disputes concerning the calculation of EBITDA for the Second Earn-out Period to the Arbitrator for resolution thereof.  *See* Ex. 3 (annexed scheduled excluded).

28.     The parties subsequently engaged in further extended correspondence and discussions in which Zeta sought to postpone arbitration, promising that it would provide additional materials.  For example, in a January 22, 2018 letter to Petitioners, Zeta stated that retaining an arbitrator would be "premature" until Zeta completed its responses to Seller's information requests. *See* Ex. 4.  Zeta thereafter supplied some additional information to Petitioners.  However, Zeta did not fully comply with Petitioners' information requests and has consistently withheld basic accounting data relevant to the preparation of Zeta's Second Earn-out Statement.

29.     Notably, in its initial correspondence to Petitioners, Zeta did not object to Petitioners' referral of the parties' disputes to arbitration.  Rather, Zeta expressed that it wished to "remove any need for arbitration" and that it was "willing to consider an appropriate extension of dates for such [arbitral] proceedings and accompanying submissions, if they become necessary."

*See* Ex. 5.  Zeta also expressed its dissatisfaction with the outcome of the First Earn-out arbitration – a position that was later rejected by the District Court.

30.      In June and July 2018, as part of a broader effort to streamline the parties' multiple then-pending disputes, the parties agreed to defer arbitration of their disputes concerning the Second Earn-out Statement pending a ruling by the District Court on their then-pending award confirmation proceeding concerning the First Earn-out Payment.  To that end, in October 2018, the parties entered into a written tolling agreement (the "Tolling Agreement") in which the parties agreed that their time to arbitrate any Disputed Payment Amount relating to the Second Earn-out Period would be tolled *sine die*.  *See* Ex. 6.  The parties further agreed that the tolling would terminate fifteen business days after written notice by either party terminating the agreement, but not prior to the entry of a decision by the District Court on the merits of the then-pending motion to confirm the award relating to the First Earn-out Payment.  *See id.*  Notably, in connection with the parties' discussions leading to the execution of the Tolling Agreement, on October 25, 2018, Zeta's counsel confirmed that Zeta considered that Petitioners had met their deadlines with respect to the Second Earn-out dispute and had made an appropriate demand for arbitration.

31.      Following issuance of the Court's Order and Final Judgment, dated November 21, 2019, confirming the arbitrator's final award with respect to the First Earn-out Payment, as well as the breakdown of interim settlement negotiations by the parties, Seller terminated the parties' Tolling Agreement on December 4, 2020.  *See* Ex. 7.  Petitioners' notice informed Zeta that the arbitrator was required to act as the sole arbiter of the Second Earn-out's Disputed Payment Amount and requested that Zeta contact Seller's counsel to discuss Deloitte's retention.  *See id.*

32.      In its January 4, 2021 response, however, Zeta informed Petitioners that it did not believe arbitration was "necessary" or "productive," claiming that "no applicable set of accounting

principles could entitle [Seller] to any portion of the second earnout." *See* Ex. 8.  Nevertheless, Zeta stated that it "may be willing to agree to proceed with a second arbitration on certain specified terms," namely a "different arbitrator" and a new "set of accounting principles" at variance with the standards already imposed by the IPA.  *Id.*  Zeta's response wholly ignored that the IPA mandates that disputes relating to earn-out payments are to be resolved through arbitration and application of the IPA's existing accounting definitions to determine whether earn-out targets were met.

33.     On January 11, 2021, Petitioners informed Zeta that they were unwilling to further delay arbitration of the issues concerning the Second Earn-out Payment Amount, addressing the various excuses advanced by Zeta in its January 4 letter.  *See* Ex. 9.   As Petitioners indicated they would, they thereafter contacted Deloitte to begin the process of retaining an arbitrator.  Despite being included in Petitioners' correspondence with Deloitte, Zeta wholly refused to participate or respond in any way during the course of that correspondence.

34.     During this correspondence, Deloitte informed the parties that, because Deloitte had been retained by Zeta in the interim as Zeta's auditor, Deloitte may no longer serve as a neutral arbitrator for these parties.  Zeta's direct engagement of Deloitte was directly at odds with the IPA, which expressly states that Deloitte shall serve as the parties' preferred accounting arbitrator. Upon information and belief, Zeta's retention of Deloitte and Deloitte's corresponding conflict were known and intentional on Zeta's part, especially given Zeta's clear indication of unhappiness with Deloitte's rulings in the parties' first arbitration and Zeta's awareness that the IPA had designated Deloitte as the parties' preferred arbitrator.

35.     Following Deloitte's disclosure of the conflict created by Zeta's conduct, Petitioners reached out to Zeta to request its participation in identifying an alternative arbitrator –

a procedure anticipated by IPA Appendix A, which defines "Accounting Arbitrator" as Deloitte "or, failing such firm's willingness or availability to so serve, such other independent firm of recognized national standing as may be mutually selected by Seller and Buyer." *See* Ex. 1 App'x A at i.  However, despite multiple efforts on Petitioners' part to move forward with the arbitration required by IPA Section 2(c), or to identify an alternative arbitrator pursuant to IPA Appendix A, Zeta has steadfastly refused to respond to any of these requests.

## COUNT I
## DEMAND FOR ARBITRATION

36.  Petitioners reallege and incorporate by reference as if set forth herein the averments contained in the preceding paragraphs.

37.  The Convention, as adopted under federal law, provides in relevant part that a court "may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States."  9 U.S.C. § 206.

38.  The FAA provides in relevant part that "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.

39.  The parties' IPA agreement requires that the parties submit all disputes concerning the Second Earn-out Payment Amount to arbitration.

40.  Pursuant to the terms of the IPA and applicable law, Petitioners are entitled to an order requiring Respondent to arbitrate this matter.

41.  Accordingly, Petitioners seek an Order from this Court compelling Respondent to participate in arbitration of the Second Earn-out Payment Amount, including but not limited to adhering to all directives by the Arbitrator with respect to Zeta's procedural and substantive

obligations under the IPA.

## PRAYER FOR RELIEF

WHEREFORE, Petitioners respectfully request judgment in their favor as follows:

42.     For an order and judgment compelling the matters asserted in this Petition to arbitration pursuant to Section 2(c) of the IPA, requiring Zeta to timely comply with all requests to appoint a neutral arbitrator and arbitrate the parties' dispute in the manner required by the IPA, including but not limited to adhering to all directives by the Arbitrator with respect to Zeta's procedural and substantive obligations under the IPA;

43.     For an award of all of Petitioners' fees and costs, including attorneys' fees, incurred as a result of Respondent's failure to adhere to its arbitration obligations under the IPA; and

44.     Granting such further relief as the Court may deem just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

Stephen M. Juris
Alexandra Verdi
Fara M. Saathoff
FRIED, FRANK, HARRIS,
SHRIVER & JACOBSON LLP
One New York Plaza
New York, New York 10004
(212) 859-8000
stephen.juris@friedfrank.com
alexandra.verdi@friedfrank.com
fara.aaathoff@friedfrank.com

*/s/ John P. DiTomo*
John P. DiTomo (#4850)
Sabrina Hendershot (#6286)
1201 N. Market Street
Wilmington, DE 19801
(302) 658-9200
jditomo@morrisnichols.com
shendershot@morrisnichols.com

*Attorneys for Petitioners MarkDutchCo 1 B.V. and Markmidco S.àr.l*

May 4, 2021